UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNAMARIE D. B.,<br><br>  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.:  20-cv-1943-MMA-DEB<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[DKT. NOS. 15, 18]** |

This Report and Recommendation is submitted to United States District Judge Michael M. Anello pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

**I.   INTRODUCTION**

Plaintiff Donnamarie D. B. seeks review of the Commissioner of Social Security's denial of disability benefits and supplemental social security income. Dkt. No. 1. The parties filed Cross-Motions for Summary Judgment and Plaintiff filed a Reply. Dkt. Nos. 15, 18, 20. For the reasons set forth below, the Court recommends DENYING Plaintiff's Motion for Summary Judgment and GRANTING Defendant's Motion for Summary Judgment.

/ /

/ /

## II. PROCEDURAL BACKGROUND

In September 2017, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income claiming disability beginning October 20, 2014. AR 188–89, 199–209.[1] The Social Security Administration ("SSA") denied Plaintiff's claim initially and on reconsideration. AR 88–97, 99–117. Plaintiff requested and obtained a hearing before an Administrative Law Judge ("ALJ"). AR 135–36, 38–82. Following the hearing, the ALJ issued a written decision finding Plaintiff not disabled. AR 17–37. The Appeals Counsel denied Plaintiff's request for review. AR 1–6. Plaintiff then filed this case.

## III. SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 20, 2014. AR 22.

At step two, the ALJ found the following severe medically determinable impairments: "diabetes with neuropathy; diabetic retinopathy and macular edema; inflammatory arthritis; status-post 2018 bariatric surgery for morbid obesity; and status-post 2019 partial amputation of the left second toe due to osteomyelitis. . . ." AR 22.

At step three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments, specifically finding the medical evidence of Plaintiff's "diabetic vision impairment" "does not establish the required loss of visual efficiency" to satisfy listing 2.04. AR 25.

---

[1] "AR" refers to the Administrative Record lodged on September 22, 2021. Dkt. No. 16. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

Before proceeding to step four, the ALJ determined Plaintiff had the physical residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can list and carry 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, she can sit six hours, and can stand and/or walk up to four hours. She cannot climb ladders or scaffolds, and cannot work at unprotected heights. She could occasionally perform postural activities, i.e., balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. Due to low vision related to her diabetes, she is unable to read small print.

AR 26.

At step four, the ALJ concluded that Plaintiff cannot perform her past relevant work. AR 30.

Finally, at step five, the ALJ accepted the vocational expert's testimony that a person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy. The ALJ, therefore, concluded Plaintiff was not disabled. AR 30–31.

## IV. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than

one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V. DISCUSSION

### A. Constitutionality

The Court first addresses Plaintiff's argument that former SSA Commissioner Andrew Saul's appointment was unconstitutional and he "had no authority to delegate to the ALJ . . . or Appeals Council to make findings of fact and issue final decisions as to benefits eligibility." Dkt. No. 15-1 at 13.

The SSA Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3) ("removal provision"). The Ninth Circuit recently held the removal provision violates separation of powers but also held it is severable from the remainder of the statute and "unless a [plaintiff] demonstrates actual harm, the unconstitutional provision has no effect on the [plaintiff's] case." *Kaufman v. Kijakazi*, No. 21-35344, 2022 WL 1233238 at *6 (9th Cir. April 27, 2022). Plaintiff has not presented any evidence or plausible theory that the removal provision caused her harm, nor does the record suggest any. The Court, therefore, concludes the constitutional deficiency in the removal provision does not affect the validity of the ALJ's decision here.

### B. Merits

Plaintiff argues the ALJ erred in formulating the part of the RFC that discussed her vision. Specifically, Plaintiff alleges the ALJ erred when he "did not state logical and rational reasons for rejecting the [near acuity] limitations described by [state agency medical consultant] Dr. [Joseph R.] Gaeta." Dkt. No. 15-1 at 10. Plaintiff contends near acuity "is a vocationally relevant term" meaning "clarity of vision at 20 inches or less." *Id.* at 8. She contends medical opinions establish she has a "near acuity" limitation, meaning that she cannot see objects within 20 inches, which is contrary to the ALJ's RFC finding of a lesser limitation of inability to read fine print. *Id.* at 8–9.

In the RFC, the ALJ concluded "[d]ue to low vision related to her diabetes, [Plaintiff] is unable to read small print." AR 27. The ALJ based this determination on the entire medical record, which reflected Plaintiff's "vision has occasionally been blurry due to diabetic retinopathy and diabetic macular edema" (AR 27; *see also* AR 1174, 1177, 1186) but her "retinopathy has been stable . . . her macular edema has responded to the Avastin injections" (AR 27; *see also* AR 654, 1174, 1176, 1178, 1181, 1187, 1190) and her visual acuity "is somewhat diminished, but stable: it has been measured at approximately 20/50-2 in her right eye and 20/30 to 20/40 in her left eye since at least early 2017" (AR 27; *see also* AR 428, 1177, 1186). The ALJ also relied on Plaintiff's eye doctor who "advised her of the importance of blood-sugar control in halting retinopathy and preventing other ocular complications" and concluded there is "no basis for concluding that her vison will not remain stable" given her improved A1C test results. AR 27; *see also* AR 1175.

The ALJ also considered the medical opinions of state agency consultants Dr. Gaeta and Dr. Julie Chu, noting "Dr. Chu. . . opined that [Plaintiff] could not do 'work requiring good vision in order to perform job duties'" (AR 28; *see also* AR 113–15) and "although Dr. Gaeta did not specifically describe the claimant's work-related vision limitations in vocationally relevant terms, the medical evidence establishing acuity of 20/60-1 in the right eye and 20/40-1 in the left eye is consistent with his testimony that the claimant's diabetic retinopathy and edema affect her near vision" (AR 29; *see also* AR 1174).

Lastly, the ALJ considered Plaintiff's own statements that "her vision is blurry" (AR 26; *see also* AR 242–55) but her "vision issues do not prevent her from accomplishing her daily living activities" (AR 27; *see also* AR 242–55).[2]

---

[2] Other substantial evidence in the record also supports the ALJ's RFC finding. Plaintiff's treating physician, Dr. Phong Tau of Seagate Medical Group, conducted a visual acuity test and determined "(t)here are no . . . visual . . . limitations." AR 427. Plaintiff's California Retina Associates treatment records also do not identify a near acuity limitation. AR 650–78, 1174–91.

  The record supports the ALJ's RFC and does not substantiate Plaintiff's claim she cannot see objects within 20 inches. The record also does not support Plaintiff's argument that Dr. Gaeta supported Plaintiff's claimed limitations. Dr. Gaeta testified that due to Plaintiff's diabetic condition, she "has retinopathy, but she sees, you know, her vision is adequate. It may not be good for close vision but it's adequate for overall vision," explaining she "has limitations regarding small vision or slight vision, but [reiterating] overall her vision seems to be adequate" and "it's not a major impairment." AR 60, 63.

  Although Plaintiff claims Dr. Gaeta's testimony "dovetail[s] with the express [RFC] described by [state agency medical consultant] Dr. Chu" (Dkt. No. 20 at 2–3), Dr. Chu's opinion undermines Plaintiff's claim that she cannot see objects within 20 inches. Specifically, Dr. Chu found Plaintiff's "near acuity" was "Unlimited." AR 114.

  In sum, the ALJ's RFC regarding Plaintiff's vision is supported by substantial evidence in the record. The Court, therefore, finds no error. *See Davis v. Berryhill,* 17-cv-01018-BAM, 2019 WL 852117, at *7 (E.D. Cal. Feb. 22, 2019) (affirming RFC determination where the ALJ reviewed and weighed all evidence in the record, including medical treatment records, physician's opinions, and claimant's subjective complaint testimony and the RFC determination was supported by substantial evidence).

## VI. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying Plaintiff's Motion for Summary Judgment (Dkt. No. 15); and (3) granting Defendant's Motion for Summary Judgment (Dkt. No. 18).

---

Moreover, when describing her vision limitations Plaintiff did not claim that she cannot see objects within 20 inches. She reported blurry vision and difficulty reading small print. *See* AR 920 (reporting her blurred vision "resolved since seeing an eye provider"); AR 1174 (reporting moderately blurry vision while reading small print); AR 49 (when asked by the ALJ, confirming she has blurry vision and trouble reading small print).

**IT IS ORDERED** that on or before **June 1, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed with the Court and served on all parties on or before **June 8, 2022**.

**IT IS SO ORDERED**.

Dated:  May 17, 2022

Honorable Daniel E. Butcher
United States Magistrate Judge